IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| OSSIE K. LARODE, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | No. 1:16-cv-741 (LMB) |
| | ) | Crim. No. 1:05-cr-61 (LMB) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Ossie K. Larode's ("Larode" or "movant") motion, filed under 28 U.S.C. § 2255, to vacate his conviction in light of Johnson v. United States (Johnson II), 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018). The Government has moved to dismiss Larode's § 2255 motion on multiple procedural and substantive grounds. For the reasons that follow, the Government's motion to dismiss will be granted, and Larode's § 2255 motion will be dismissed.

I.

Larode was initially indicted on February 10, 2005 by a federal grand jury in the Eastern District of Virginia. After one of the injured victims died as a result of his injuries, on April 6, 2005, a superseding five-count indictment was returned charging Larode with carjacking resulting in death in violation of 18 U.S.C. § 2119 (Count 1); murder of a federal officer in violation of 18 U.S.C. § 1111 (Count 2); assaulting a federal officer in violation of 18 U.S.C. § 111 (Count 3); attempted murder of a federal officer in violation of 18 U.S.C. § 1114 (Count 4); and using, brandishing, and discharging a firearm during a crime of violence in

violation of 18 U.S.C. § 924(c) (Count 5). Counts 3 and 4 were the predicate crimes of violence for Count 5.

Under a written plea agreement, on June 30, 2006, Larode pleaded guilty to murder in the second degree as charged under Count 2 and to using a firearm during a crime of violence as charged under Count 5. Counts 1, 3, and 4 were dismissed on the Government's motion. The plea agreement incorporated a signed statement of facts that established the following:

> On January 11, 2005, defendant Ossie K. Larode approached Mr. Byung Ki Kim outside the McDonald's restaurant located at 1000 North Henry Street, in Alexandria, Virginia, knocked the keys to a 2003 Cadillac Seville from Kim's hand, threatened to shoot Kim if he didn't back away, got in the vehicle and drove off.
>
> Kim telephoned a report of the carjacking to the Alexandria Police Department, and Alexandria police and other law enforcement officers began looking for the vehicle. One of those officers spotted the vehicle in Alexandria and began a pursuit that eventually was joined by other officers and led to Interstate 395 in the vicinity of the Pentagon. As Larode drove by the Pentagon, he suddenly turned the wrong way on to [sic] an exit ramp that led from the Pentagon South Parking Lot to Interstate 395, and sped toward the South Parking Lot, followed by several pursuing officers. As he left the ramp he continued the wrong way on South Rotary Road, which runs along the perimeter of the parking lot and which is in the Eastern District of Virginia.
>
> At that same time, James Feltis, a federal employee and officer with the Pentagon Police Department, was on duty outside a traffic control booth on South Rotary Road. Apparently, thinking that Larode was simply lost or confused, Feltis stepped into the traffic lane and into the path of the Cadillac and signalled [sic] for him to stop. Instead and without making any effort to slow down or stop, Larode struck Feltis, critically injuring him and knocking him into the air.
>
> Feltis was medevaced to Inova Fairfax Hospital, in Fairfax, Virginia, where he died, having never regained consciousness, on February 14, 2005, as a proximate result of the injuries he incurred when he was struck by Larode. Throughout his attempt to elude the pursuing officers, including the time immediately before his striking of Feltis, defendant Larode drove the stolen Cadillac recklessly with extreme disregard for human life. His taking of Feltis' life was unlawful and did not result from accident, inadvertence or other [sic] innocent reason.
>
> After striking Feltis, Larode continued the wrong way on South Rotary Road, up the wrong way on the ramp to Washington Boulevard with several officers still in pursuit and entered Washington Boulevard still going the wrong direction. Larode then tried to turn in the right direction, and as he did so, his car was struck and

stopped by one of the pursuing officers. Once Larode stopped, one of those officers ordered him to get out of his vehicle. When he didn't, the officers broke the drivers [sic] side window and pulled Larode from the vehicle. A struggle ensued between Larode and the officers, during which Larode assaulted three Pentagon Police Department officers, who were assisting in subduing Larode, and all of whom at the time were employees of the United States engaged in the performance of their official duties. In the course of Larode's assaulting the Pentagon Police Department officers, he got possession of one of the other officers' service firearms, a Glock .40 caliber semiautomatic pistol, and fired it three times at them.

Larode's assaulting of the three Pentagon Police Department officers was unlawful as was his using, brandishing and discharging the pistol during and in relation to that assault.

Statement of Facts [Dkt. No. 55] ¶¶ 1-6. Larode's plea was accepted, and he was sentenced to a total of 382 months' imprisonment, consisting of 262 months for Count 2 and 120 consecutive months for Count 5, among other penalties.[1] Larode did not appeal either his conviction or his sentence.

On June 23, 2016, Larode filed a motion pursuant to 28 U.S.C. § 2255 arguing that his conviction for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) should be vacated in light of Johnson II, 135 S. Ct. 2551 (2015), which held that 18 U.S.C. § 924(e)(2)(B)(*ii*)—what is known as the "residual clause" of the Armed Career Criminal Act ("ACCA")—was unconstitutionally vague, id. at 2556-63. The Government moved to dismiss Larode's § 2255 motion. In December 2016, the Court stayed these proceedings to await the decision in what became Sessions v. Dimaya, 138 S. Ct. 1204 (2018), in which the Supreme Court held that a similar residual clause in 18 U.S.C. § 16(b) was also unconstitutionally vague. After the Dimaya opinion was issued, the stay in these proceedings was lifted, and the Government was ordered to show cause why Larode's motion should not be granted. The

---

[1] Larode had a category I criminal history and a total offense level of 37, resulting in an advisory guidelines range of 210 to 262 months' imprisonment for Count 2.

3

Government responded with a supplemental motion to dismiss, which has been fully briefed, and the Court finds that oral argument would not aid the decisional process.

## II.

### A.

Section 924(c) of Title 18 of the U.S. Code provides in relevant part:

> (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . —
>
>> (i) . . . be sentenced to a term of imprisonment of not less than 5 years;
>>
>> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>>
>> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> . . . .
>
> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(1), (3). Subsection (A) of § 924(c)(3) is often called the "force" or "elements" clause,[2] and subsection (B) is known as the "residual" clause.

---

[2] This Court has traditionally referred to § 924(c)(3)(A) as the "force" clause. See, e.g., Royer v. United States, 324 F. Supp. 3d 719, 725 (E.D. Va. 2018). In a recently issued opinion on a similar provision in the ACCA, the Supreme Court referred to § 924(e)(2)(B)(*i*) as the "elements" clause. See Stokeling v. United States, No. 17-5554, 2019 WL 189343, at *3 (U.S. Jan. 15, 2019). Although this Court will continue to refer to § 924(c)(3)(B) as the force clause, "elements clause" is perhaps a more faithful descriptor.

4

Section 924(c)(3) is similar in text and structure to other provisions of the U.S. Code. For example, using nearly identical language, 18 U.S.C. § 16 provides:

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.[3] Similarly, the ACCA, in 18 U.S.C. § 924(e), provides:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Id. § 924(e)(2)(B).[4]

B.

Larode's motion to vacate his conviction for using a firearm during a crime of violence in violation of § 924(c) is based on two Supreme Court decisions respectively addressing

---

[3] Section 16 does not itself criminalize any conduct or mandate any enhanced punishments. Instead, it provides a generic definition of "crime of violence" that is incorporated by reference into other provisions of the U.S. Code. See, e.g., 8 U.S.C. § 1101(a)(43) (defining "aggravated felony" for purposes of immigration removal to include any "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [sic] at least one year").

[4] Section 924(e) provides for a minimum term of 15 years' imprisonment for any individual convicted of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) and who has three previous convictions for violent felonies and/or serious drug offenses.

5

§ 924(e)(2)(B)(*ii*) and § 16(b): Johnson II, 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018). Johnson II held that the ACCA's residual clause was unconstitutionally vague and thus could not be used to increase a defendant's sentence. The Court identified two particular aspects of the ACCA's residual clause that made it constitutionally problematic. First, the Court's jurisprudence had previously established that a court tasked with deciding whether the ACCA's residual clause covers a prior conviction must employ the "categorical approach," under which the court must "picture the kind of conduct that the crime involves in 'the ordinary case,' and . . . judge whether that abstraction presents a serious potential risk of physical injury." Johnson II, 135 S. Ct. at 2557 (quoting James v. United States, 550 U.S. 192, 208 (2007)). The Court observed that there are many strategies a court may employ in deciding what the "ordinary case" of a crime involves, that those strategies often produce contradictory conclusions, and that the residual clause "offers no reliable way to choose between these competing accounts." Id. at 2557-58. Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2558. The Court made clear that the constitutional defect in the ACCA's residual clause stemmed from the combination of these two characteristics. See id. ("It is one thing to apply an imprecise 'serious potential risk' standard to real world facts; it is quite another to apply it to a judge-imagined abstraction.").

In Dimaya, the Court held that under a "straightforward application" of Johnson II, § 16(b)'s residual clause, like the residual clause in § 924(e), is also unconstitutionally vague. 138 S. Ct. at 1214-16. The Dimaya Court reasoned that § 16(b) "has the same two features . . . combined in the same constitutionally problematic way" as § 924(e): it requires courts to use the

categorical approach[5] and at the same time does not make clear "what threshold level of risk" must be satisfied to classify a given crime as a violent felony. Id. at 1213-14.

### III.

Larode contends that § 924(c)(3)(B), which is similar to § 924(e) and nearly identical to § 16(b), is also unconstitutionally vague and that therefore his conviction for violating § 924(c) must be set aside. The Government responds that Larode's § 2255 motion is barred by a bevy of procedural obstacles and, in any event, fails on the merits. This Court has extensively addressed and rejected the Government's procedural arguments in previous cases involving § 924(c), see, e.g., Chapman v. United States, 326 F. Supp. 3d 228, 236-42 (E.D. Va. 2018), appeal docketed, No. 18-6871 (4th Cir. July 20, 2018); Khan v. United States, 330 F. Supp. 3d 1076, 1086-92 (E.D. Va. 2018), appeal docketed, No. 18-6970 (4th Cir. Aug. 6, 2018); Royer v. United States, 324 F. Supp. 3d 719, 728-36 (E.D. Va. 2018); Gordillo Portocarrero, No. 1:10-cr-66, 2019 WL 181119, at *4-6 (E.D. Va. Jan. 11, 2019), and need not rehash those arguments here because Larode's predicate offense of assaulting a federal officer, as cited in Count 5 of the superseding indictment, properly qualifies as a crime of violence under both the residual clause and the force clause of § 924(c)(3).

### A.

The parties have fundamentally mischaracterized the § 924(c)(3) analysis. Larode's motion to vacate states that "the underlying 'crime of violence' for the § 924(c) charge was 18 U.S.C. § 1111 (murder)." Mot. to Vacate Conviction Under 28 U.S.C. § 2255 [Dkt. No. 70] 1. Accordingly, Larode has argued not only that the residual clause is unconstitutionally vague, but

---

[5] The Government did not ask the Supreme Court to abandon the categorical approach in either Johnson II or Dimaya.

7

also that "federal murder categorically fails to qualify as a 'crime of violence' under the remaining force clause." Id. at 3. The Government has followed suit, arguing that "murder in the second degree . . . is categorically a crime of violence under § 924(c)(3)(A)." Gov't's Suppl. Resp. & Mot. to Dismiss Def.'s Pet. Under 28 U.S.C. § 2255 [Dkt. No. 83] 16.

But the parties have focused on the wrong offense. To be sure, Larode pleaded guilty to second-degree murder and using a firearm during a crime of violence; however, second-degree murder was <u>not</u> the predicate offense for his 924(c) conviction. Instead, as the superseding indictment makes clear, Count 5 charged Larode with using, brandishing, and discharging a firearm

> during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, specifically, assaulting an officer of the United States in violation of Title 18, United States Code, Section 111, as set forth and charged in Count 3, and attempted murder of an officer of the United States in violation of Title 18, United States Code, Section 1114, as set forth and charged in Count 4 . . . .

Thus, it was not second-degree murder, but rather assault on, and attempted murder of, a federal officer, which served as the predicate crimes of violence for Larode's § 924(c) conviction and which must be analyzed under § 924(c)(3).

That Counts 3 and 4 of the superseding indictment were ultimately dismissed as part of Larode's plea agreement is inconsequential. "[W]hile it is necessary for the government to present proof of the underlying crime to convict under § 924(c), a defendant need not be convicted or even charged with the underlying crime to be convicted under § 924(c)." United States v. Nelson, 27 F.3d 199, 200-01 (6th Cir. 1994); see United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002). What matters, in other words, is not to which offenses Larode pleaded guilty, but rather to what facts he stipulated in entering his plea and what predicate offenses he committed based on those facts.

With these principles in mind, the Court must consider whether either of Larode's predicate offenses qualifies as a crime of violence for purposes of § 924(c)(3).

B.

Larode argues that § 924(c)(3)(B), the residual clause, must be treated just as the Supreme Court treated § 924(e)(2)(B)(*ii*) and § 16(b) in Johnson II and Dimaya, respectively. That is, he argues that in determining whether a predicate offense qualifies as a crime of violence under § 924(c)(3)'s residual clause, the Court is bound to apply the categorical approach, which (in conjunction with the clause's capacious language) renders that clause unconstitutionally vague. The Government disagrees, arguing that the residual clause may fairly be read to require a "conduct-specific" approach—one based on the defendant's actual, real-world behavior rather than on a generalized analysis of the nature of the crime charged—and that such an approach would avoid any constitutional defects in the residual clause.

This Court has adopted the Government's view in other § 924(c) cases, see, e.g., Chapman, 326 F. Supp. 3d at 243-47; Khan, 330 F. Supp. 3d at 1093-97; Royer, 324 F. Supp. 3d at 737-42, as have multiple federal courts of appeals, see United States v. Douglas, 907 F.3d 1, 8-16 (1st Cir. 2018), petition for cert. docketed, No. 18-7331 (U.S. Jan. 9, 2019); United States v. Barrett, 903 F.3d 166, 178-84 (2d Cir. 2018), petition for cert. docketed, No. 18-6985 (U.S. Dec. 11, 2018); Ovalles v. United States, 905 F.3d 1231, 1244-52 (11th Cir. 2018).[6] This Court again concludes that the text and context of § 924(c) are consistent with a conduct-specific

---

[6] Other courts of appeals have suggested that the Government's argument may have merit but have considered themselves bound to apply the categorical approach under existing circuit precedent. See, e.g., United States v. Davis, 903 F.3d 483, 485 (5th Cir. 2018), cert. granted, No. 18-431 (U.S. Jan. 4, 2019); United States v. Eshetu, 898 F.3d 36, 37 (D.C. Cir. 2018) (per curiam).

approach and that when analyzed under that approach, § 924(c)(3)'s residual clause does not suffer from any constitutional defect.

Applying the conduct-specific approach in this case, the Court has little trouble concluding that Larode's conviction and sentence for using a firearm during a crime of violence was proper. Larode carjacked a Cadillac and fled, leading police on a dangerous pursuit "with extreme disregard for human life." Statement of Facts [Dkt. No. 55] ¶ 3. As Larode sped the wrong way down a one-way road, his car struck Feltis, throwing him into the air, knocking him unconscious, and injuring him so severely that he would die a month later. Once three Pentagon Police Department officers finally managed to stop Larode's car and pulled him out of the vehicle, he proceeded to struggle violently with the officers. During the struggle, he grabbed an officer's service firearm and fired it at the officers three times. There is simply no doubt that by violently fighting with the three federal officers and firing a gun at them, Larode committed a criminal offense that "by its nature . . . involve[d] a substantial risk that physical force against the person or property of another" would be used, 18 U.S.C. § 924(c)(3)(B). Accordingly, Larode was properly convicted of using, brandishing, and discharging a firearm during a crime of violence under § 924(c)(3)(B).

C.

Although the foregoing analysis is sufficient to dismiss Larode's § 2255 motion, his conviction was also proper for the independent reason that he committed a crime of violence under the force clause. As discussed above, the predicate offenses for Larode's § 924(c) conviction were assaulting a federal officer in violation of 18 U.S.C. § 111 and attempted murder of a federal officer in violation of § 1114. Because assaulting a federal officer qualifies as a crime of violence under the force clause—at least where, as here, the defendant is charged under

§ 111's enhanced-penalty provision—the Court need not address whether attempted murder of a federal officer also qualifies under that clause.[7]

Under Fourth Circuit precedent, analyzing whether an offense falls within the force clause's ambit requires the Court to apply the categorical approach,[8] considering only "the fact

---

[7] But cf. Gordillo Portocarrero, 2019 WL 181119, at *7-9 (aiding and abetting attempted murder in aid of racketeering qualifies as a crime of violence under § 924(c)(3)'s force clause).

[8] Although this Court has jettisoned the categorical approach with respect to § 924(c)(3)'s residual clause, see, e.g., Chapman, 326 F. Supp. 3d at 244-47, it has not done so with respect to that section's force clause, mostly because the constitutional concerns raised by Johnson II and Dimaya did not implicate the force clause and thus did not disrupt the precedential weight of United States v. Fuentes, 805 F.3d 485 (4th Cir. 2015), and other Fourth Circuit opinions requiring that approach. And of course, by referring to any "offense that . . . has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. 924(c)(3) (emphasis added), the text of the force clause certainly suggests that what matters is not a given defendant's actual conduct, but rather the statutory or common-law elements of the offense itself. Cf. Shepard v. United States, 544 U.S. 13, 20 (2005).

Yet there is little doubt that applying the categorical approach to the force clause often produces "arbitrary and inequitable results." Mathis v. United States, 136 S. Ct. 2243, 2258 (2016) (Kennedy, J., concurring); see also United States v. Valdivia-Flores, 876 F.3d 1201, 1211 (9th Cir. 2017) (O'Scannlain, J., specially concurring) (noting that applying the categorical approach can produce "an especially absurd result" in cases where "the challenger is clever enough to find some space in the state statutory scheme that lies outside the federal analogue, . . . even though the challenger admits that the actual conduct underlying his state conviction falls at the heart of the federal analogue"); United States v. Faust, 853 F.3d 39, 60-61 (1st Cir. 2017) (Lynch, J., concurring) (observing that applying the categorical approach to the force clause "can lead courts to reach counterintuitive results, and ones which are not what Congress intended"); United States v. Doctor, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) (criticizing the categorical approach for giving rise to "an endless gauntlet of abstract legal questions," "serv[ing] as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," and "convert[ing] traditional questions of fact into byzantine questions of law that amount almost to willful blindness to what the defendant actually did"), cert. denied, 137 S. Ct. 1831 (2017). It is often difficult to assert, without blushing, that a rational Congress could have intended those results. As such, there may come a time where the Supreme Court or the Fourth Circuit, "in the face of a system that each year proves more unworkable," decides "to revisit [their] precedents in an appropriate case." Mathis, 136 S. Ct. at 2258 (Kennedy, J., concurring).

In that sense, it bears emphasizing that the categorical approach was raised in a specific environment. It came about as a means of sorting out whether a defendant's previous conviction—often years old and the product of prosecution in a different jurisdiction or by a

of conviction and the statutory definition of the . . . offense" and ignoring any particular facts about the defendant's actual conduct. United States v. Fuentes, 805 F.3d 485, 498 (4th Cir. 2015) (citation omitted). There is a limited exception if the criminal statute is "divisible"—that is, if it "lists multiple, alternative elements, and so effectively creates several different . . . crimes"—the Court may look to "a limited class of documents, such as indictments and jury instructions, to determine which alternative" served as the predicate offense. Descamps v. United States,

---

different sovereign—justifies an enhanced sentence in a new federal prosecution, see, e.g., Taylor v. United States, 495 U.S. 575, 578-79 (1990) (addressing § 924(e)(2)(B)); Shepard, 544 U.S. at 15-16 (same), or makes an alien removable in the immigration context, see, e.g., Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 185-86 (2007) (addressing 8 U.S.C. § 1101(a)(43)); Kawashima v. Holder, 565 U.S. 478, 481-83 (same). That environment carries with it unique concerns. One is that "the practical difficulties and potential unfairness of a factual approach are daunting" because the underlying facts supporting a previous conviction are often not before the court. See Shepard, 544 U.S. at 20 (quoting Taylor, 495 U.S. at 601); see also Moncrieffe v. Holder, 569 U.S. 184, 200 (2013) ("The categorical approach serves 'practical' purposes: It promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact."). Another concern (at least in the ACCA context) is avoiding the potential Sixth Amendment concerns in the vein of Apprendi v. New Jersey, 530 U.S. 466 (2000), that could arise if courts were required to "mak[e] findings of fact" with respect to prior convictions "that properly belong to juries." Dimaya, 138 S. Ct. at 1217 (plurality opinion) (quoting Descamps v. United States, 570 U.S. 254, 267 (2013)). These were the practical realities that produced the categorical approach.

Those conditions are simply not present in cases where "the predicate offense and the § 924(c) offense are companion contemporaneous crimes, charged in the same indictment before the same federal judge." United States v. St. Hubert, 883 F.3d 1319, 1335 (11th Cir.), cert. denied, 139 S. Ct. 246, vacated on other grounds, 909 F.3d 335 (11th Cir. 2018). In cases such as Larode's, "the record of all necessary facts are [sic] before the district court," and those facts "unmistakably shed light on whether the predicate offense was committed with 'the use, attempted use, or threatened use of physical force against the person or property of another.'" United States v. Robinson, 844 F.3d 137, 141 (3d Cir. 2016), cert. denied, 138 S. Ct. 215 (2017). Under such circumstances, "analyzing a § 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the determination that the predicate offense" falls under the force clause. Id. at 143. Although Fuentes remains controlling law in this circuit for the time being, this Court believes that the categorical approach should be abandoned with respect to criminal statutes, like § 924(c), that incorporate as an element of the criminal offense the commission of another predicate offense.

12

570 U.S. 254, 257, 263-64 (2013) (alteration in original) (internal quotation marks and citation omitted).

> Section 111 of Title 18 of the U.S. Code provides:
>
> (a) In general.—Whoever—
>
>> (1) forcibly assaults, resists, opposes, intimidates, or interferes with any person designated in section 1114 of this title[9] while engaged in or on account of the performance of official duties; or
>>
>> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.

In assessing whether § 111 "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" and thus qualifies as a crime of violence under § 924(c)(3)(A), the Court is principally guided by Johnson v. United States (Johnson I), 559 U.S. 133 (2010), which held that the phrase "physical force" in § 924(e)'s identically

---

[9] Section 1114 establishes special offenses for murder, manslaughter, or attempted murder or manslaughter of "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance." 18 U.S.C. § 1114. Thus, although Count 3 of the superseding indictment charged Larode with assaulting federal officers "[i]n violation of Title 18, United States Code, Sections 111(a), 111(b) & 1114," § 1114 simply specifies who qualifies as a federal officer.

worded force clause "means <u>violent</u> force—that is, force capable of causing physical pain or injury to another person," <u>id.</u> at 140. The Court reaffirmed that definition in <u>Dimaya</u>, 138 S. Ct. at 1220, and purported to do so again most recently in <u>Stokeling v. United States</u>, No. 17-5554, 2019 WL 189343, at *6 (U.S. Jan. 15, 2019).[10]

Many courts, applying <u>Johnson I</u>, have concluded that although § 111(a) uses the adverb "forcibly," it "is categorically not a crime of violence because 'the government need not prove, and an adjudicator need not find, that the offense involved <u>violent</u> force capable of causing physical pain or injury.'" <u>See</u> <u>United States v. Diaz</u>, 865 F.3d 168, 178-79 (4th Cir. 2017) (citation omitted); <u>see also, e.g.</u>, <u>United States v. Dominguez-Maroyoqui</u>, 748 F.3d 918, 921 (9th Cir. 2014) (holding that § 111(a) does not qualify as a "crime[ ] of violence" under section 2L1.2 of the Sentencing Guidelines[11] because "a defendant may be convicted of violating section 111 if he or she uses <u>any force whatsoever</u> against a federal officer" (citation omitted)). Yet the Court need not address this line of cases—or the related question whether <u>Stokeling</u> sufficiently unsettled <u>Johnson I</u> to merit reconsideration of those courts' analysis—because § 111 "is plainly divisible," <u>see</u> <u>United States v. Taylor</u>, 848 F.3d 476, 492 (1st Cir.), <u>cert. denied</u>, 137 S. Ct. 2255

---

[10] The majority opinion in <u>Stokeling</u> states that its reasoning "comports with" <u>Johnson I</u>. 2019 WL 189343, at *9. Nonetheless, the <u>Stokeling</u> Court's conclusion that Florida robbery—which requires only any measure of "resistance by the victim that is overcome by the physical force of the offender"—qualifies as a crime of violence under the ACCA's force clause, <u>id.</u> (citation omitted), is difficult to square with the Court's statements in <u>Johnson I</u> that "physical force" means force that is "violent," "substantial," and "strong," <u>see</u> 559 U.S. at 140. Although <u>Johnson I</u>'s ongoing vitality in light of <u>Stokeling</u> is an open question, that question has no bearing on the disposition of Larode's § 2255 motion.

[11] <u>See</u> U.S. Sentencing Guidelines Manual § 2L1.1 cmt. (U.S. Sentencing Comm'n 2018) (providing that "crime of violence" means, among other things, any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another").

(2017). Accordingly, the Court may take notice of the fact that Larode was charged with violating § 111(b),[12] which unquestionably qualifies as a crime of violence.

Section 111(b) establishes an enhanced penalty for any defendant who "uses a deadly or dangerous weapon . . . or inflicts bodily injury" in the course of "forcibly" assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer in the course of that officer's performance of official duties. Both forms of an enhanced § 111(b) charge qualify as predicate crimes of violence under § 924(c)(3)(A). First, a deadly or dangerous weapon is "any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person." Taylor, 848 F.3d at 493 (quoting United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990)). Courts have uniformly held that by combining the requirement of "forcibl[e]" action with the use of a deadly weapon, § 111(b) "elevate[s] th[e] lower degree of physical force" under § 111(a) "into 'violent force' sufficient to establish § 111(b) as a 'crime of violence.'" United States v. Rafidi, 829 F.3d 437, 445-46 (6th Cir. 2016), cert. denied, 137 S. Ct. 2147 (2017); see Taylor, 848 F.3d at 492-93 ("[E]very court we are aware of that has considered the issue has found that [§ 111(b) qualifies as a crime of violence] because the elements of the enhanced offense require the use, attempted use, or threatened use of force capable of causing pain or injury."). This is true even "in the absence of physical contact": A defendant may be convicted of violating § 111 if he engages in "such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death," which in combination with the use or brandishing of a deadly weapon is more than enough to satisfy § 924(c)(3)(A)'s

---

[12] Count 3 of the superseding indictment charged Larode with violating 18 U.S.C. § 111(a) and (b). As long as one of the predicate offenses underlying Larode's § 924(c) conviction is categorically a crime of violence under § 924(c)(3)(A), it is irrelevant that he was also charged with another offense that may or may not qualify.

15

requirement of the "threatened use of physical force." See Rafidi, 829 F.3d at 446. Second, "if 'a slap in the face' counts as violent force under Johnson [I]," then a fortiori a "forcible" act that "inflicts bodily injury" counts as well. See Taylor, 848 F.3d at 494 (citations omitted).

Accordingly, § 111(b), one of the predicate offenses underlying Larode's § 924(c)(3) conviction, qualifies as a crime of violence under the force clause. Although Larode did not plead guilty to Count 3, he admitted in the statement of facts incorporated into his plea agreement that he physically struggled with three Pentagon Police Department officers, grabbed one of their firearms, and fired the weapon at the officers as they attempted to subdue him. Indeed, the statement of facts explicitly states on no fewer than three occasions that Larode "assaulted" the federal officers. These stipulated facts are more than sufficient to serve as definitive proof of the underlying predicate offense. Thus, even if the Fourth Circuit or the Supreme Court were to declare § 924(c)(3)'s residual clause to be unconstitutionally vague, Larode's conviction would stand under the force clause.

IV.

For the reasons stated above, movant's Motion to Vacate Conviction Under 28 U.S.C. § 2255 [Dkt. No. 70] will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 24 day of January, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge